ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
MAY - 9 2006
U.S. COURT OF FEDERAL CLAIMS

| | |
|---|---|
| Rome Research Corporation,<br><br>Plaintiff,<br><br>*v.*<br><br>United States,<br><br>Defendant. | Case No. 06-377 C<br><br>(Judge ____________) |

**COMPLAINT**

Plaintiff Rome Research Corporation ("RRC"), through undersigned counsel, respectfully submits the following complaint:

**Introduction**

1. This complaint arises from the denial by the United States Department of the Navy of RRC's certified claim for a price adjustment pursuant to Federal Acquisition Regulation ("FAR") § 52.222-43, the Fair Labor Standards Act and Service Contract Act -- Price Adjustment clause (hereinafter, the "SCA Price Adjustment clause") or, alternatively, under either FAR § 52.243, Changes – Fixed Price (August 1987), et seq. (the "Changes clause") or the law of mistake. RRC requested that adjustment to cover its increased costs of complying with the terms of a Department of Labor ("DOL") Wage Determination ("WD"). That WD incorporated the terms of a Collective Bargaining Agreement ("CBA") applicable to Service Contract Act ("SCA") covered employees in the contract year commencing on October 1, 2002.

2. Among the matters at issue in this case is a contractor's entitlement to a price adjustment for the increased costs associated with providing its employees what is commonly

known as a "defined-benefit" plan. Under a defined-benefit plan, an employee receives a fixed benefit or set of benefits regardless of the cost to the employer. In a defined-benefit plan, in contrast to a defined-contribution plan, the employer's cost is fixed, and the employee's benefit varies depending on what the employer's fixed contribution can buy. Much of the dispute in this case centers on the contractor's claim for price adjustments to cover the statutorily mandated increased costs of providing a defined-benefit plan adopted in a CBA by the contractor and its employees in an arms-length negotiation, the terms of which never have been questioned by the Government.

3. The entitlement to price adjustments for certain items (particularly the increased costs of certain defined benefits) under the SCA Price Adjustment clause is one of the principal issues presented in another case currently pending before the United States Court of Appeals for the Federal Circuit. That case is entitled *Lear Siegler Services, Inc. v. Rumsfeld*, Case No. 06-1080. Other than the common legal issue, there is no connection between the parties or the underlying facts of that case and the case now before this Court.

**Parties**

4. Plaintiff RRC is a corporation organized under the laws of the State of New York and is a provider of technical services and products to a variety of agencies of the United States Government, primarily within the Department of Defense. RRC's services include technical services, facility operations, the provision of communications technology, and research and development of advanced communications products and services.

5. Defendant is the United States, acting through the Department of the Navy, Naval Supply Systems Command, Fleet and Industrial Supply Center, San Diego (hereafter, the "Government," the "Navy," or "FISCSD").

## Jurisdiction

6. This action arises out of a Government Contract, contract no. N00244-02-C-0052 (the "Contract") awarded by the Navy to RRC on September 11, 2002.

7. RRC submitted a certified claim dated March 15, 2005 to the contracting officer seeking a price adjustment under the SCA Price Adjustment clause, an adjustment under the Changes clause, or, alternatively, an adjustment based on the law of mistake. The amount of the claim was $ 830,725.

8. On May 11, 2005, the Navy's contracting officer issued a final decision that denied RRC's claim in its entirety. A true and correct copy of the final decision of the contracting officer is attached hereto as Exhibit 1.

9. This Court, therefore, has jurisdiction to review, de novo, the final decision of the contracting officer pursuant to section 10(a) of the Contract Disputes Act of 1978; 41 U.S.C. § 609(a); 28 U.S.C. § 1491(a)(2).

## Facts

10. RRC was awarded the Contract by the Navy to provide services for the operation and maintenance of various communications facilities located in Guam. The estimated amount of the award for the base period of the Contract was $5,046,471.00.

11. The Contract initially called for the provision for services during a base period that ended on September 30, 2003. The Contract further provided for three option years above and beyond the initial base period. All options have been exercised and the Contract will run through September 30, 2006.

12. RRC, at the time it was awarded the Contract at issue in this case, was the incumbent contractor under a substantially similar contract that came to an end immediately before the instant Contract commenced.

13. As awarded, the Contract contained the following standard FAR clauses (among others):

- FAR § 52.222-41, Service Contract Act of 1965, As Amended (May 1989);
- FAR § 52.222-43, Fair Labor Standards Act and Service Contract Act--Price Adjustment (Multiple Year and Option Contracts) (May 1989);
- FAR § 52.243, Changes – Fixed Price (August 1987); and
- FAR § 52.243 Alt II, Changes – Fixed Price (Aug 1987) – Alternate II (Apr. 1984).

14. RRC, under the former and current contracts, has employed and continues to employ a range of exempt and nonexempt workers to staff, service, operate and/or maintain various communications facilities located at Guam.

15. At all times, some portion of these workers have been covered by a CBA entered into between RRC and Local Union No. 111 of the International Brotherhood of Teamsters (the "Union"). Workers who were not members of the bargaining unit were paid in accordance with the wage and benefits requirements of prevailing WDs issued by DOL.

16. Specifically, the Contract required RRC to comply during the base year of the Contract with WD No. 1999-0108, Revision 2 (incorporating a Collective Bargaining Agreement), WD No. 1994-2147, Revision 19, and a separate CBA.

17. During the base year of the instant Contract, the Union organized all of RRC's employees at the Guam facilities and negotiated a new CBA that went into effect September 30, 2003.

18. Pursuant to FAR § 52.222-41(m), the new CBA was timely submitted to DOL for incorporation as a WD. Following approval by DOL, the Government incorporated the new WD and CBA into the Contract pursuant to Modification P0005, which went into effect simultaneously with the commencement of the October 1, 2003 option period.

19. The fringe benefits required by the CBA that the Government incorporated into the Contract included:

- Company-paid life insurance;
- Company-paid accidental death and disability insurance;
- Medical plan benefits for employees and insured dependents, with no premiums to the employee; and
- Dental plan benefits for employees and insured dependents, at no cost to the employee.

RRC, and/or its predecessor contractor, Baker Support Services, Inc., have provided some or all of these fringe benefits pursuant to CBA and WD requirements on a defined-benefit basis since as early as September 1997.

20. In each Government Fiscal Year ("GFY") under the Contract, RRC procured insurance for its employees from various insurance providers. For example, its medical and dental care plans were provided by PacifiCare Asia Pacific. RRC's costs of providing these health and welfare benefits increased dramatically following the Government's issuance of Modification P0005.

21. In GFY2002, the base year of the Contract, RRC's cost of providing the mandated health benefits was $165.98, $351.80, and $557.61 per month for, respectively, single employee, employee-plus-one-person, and family benefits. In GFY2003, the cost increased to $166.44,

$352.86, and $559.25 per month for, respectively, single employee, employee-plus-one-person, and family benefits. In GFY2004, the cost increased to $173.10, $366.97, and $581.62 per month for, respectively, single employee, employee-plus-one-person, and family benefits.

22. In addition to the increasing costs of providing H&W benefits, RRC experienced "accompanying increases in social security and unemployment taxes and workers' compensation insurance" within the meaning of paragraph (e) of the SCA Price Adjustment clause.

23. RRC also experienced a substantial increase in gross receipts taxes assessed by the Government of Guam to RRC as a consequence of the increases in Contract wage and fringe benefit costs.

24. RRC gave the Navy timely notice of these increased costs. RRC first requested an adjustment on or before October 31, 2003. Later, on December 12, 2003, RRC submitted a more formal SCA Price Adjustment request pursuant to FAR § 52.222-43. This proposal sought a price adjustment to account for RRC's increased costs under the new CBA. Among other items, RRC sought an adjustment for the following increased costs: (1) increases in straight-time wages due to the application of higher wage rates; (2) increases in overtime wages due to the application of higher wage rates; (3) increased shift and lead premiums due to the application of higher wage rates; (4) accompanying increases in social security and unemployment taxes and workers' compensation insurance; (5) increases in health and welfare fringe benefits, including health insurance and life and accidental death & dismemberment insurance, made to comply with the new CBA; and (6) increases in gross receipts taxes.

25. A company that does business in Guam is required to pay a Gross Receipts Tax equal to a percentage of the company's total revenue derived from its work in Guam. RRC's revenue under the Contract, by definition, includes the payments it receives from the

Government for the wages paid to its workers. When, as here, the WD mandates an increase in wages to be paid to workers as required by the SCA, there will be a concomitant increase in the contract price. Likewise, there will be and, in fact, has been an increase in the total revenue collected by RRC, which has resulted in an increase in the Gross Receipts Taxes owed by RRC to the government of Guam.

26. The Government, by Contract Modification P00009, accepted a significant portion of RRC's adjustment request; however, it rejected a number of items. Of particular concern to RRC, the Government concluded that the price adjustment should not include cost elements regarding (1) fringe benefits (i.e., health, dental, life, and accidental death and disability ("ADD") insurance); (2) the Guam Gross Receipts Taxes ("GRT"); and (3) increased overtime wage premiums.

27. RRC thereafter, by certified claim dated March 15, 2005, requested a price adjustment reflecting its increased costs incurred pursuant to the Department of Labor wage determination that adopted the Collective Bargaining Agreement to which RRC is bound under this Contract. In its claim, RRC sought the following sums: fringe benefit adjustment of $476,007; gross receipt tax of $321,289; and overtime wage adjustment of $33,430. The total requested price adjustment was for $830,725.

28. By a Contracting Officer's Final Decision dated May 11, 2005, FISCSD denied RRC's certified claim. *See Exhibit 1.*

**Count I**
**(SCA Price Adjustment – H&W, Life Insurance, and Accidental Death & Disability Benefits)**

29. RRC incorporates paragraphs 1 through 28 of this Complaint as if fully set forth herein.

30. The SCA Price Adjustment clause provides in relevant part that: "The contract price or contract unit price labor rates will be adjusted to reflect the Contractor's actual increase or decrease in applicable wages and fringe benefits to the extent that the increase is made to comply with . . . (1) The Department of Labor wage determination applicable on the anniversary date of the multiple year contract, or at the beginning of the renewal option period."

31. The SCA Price Adjustment clause does not require that a changed WD be issued before the contractor is entitled to a price adjustment.

32. All that is required for the contractor to be entitled to a price adjustment under the plain meaning of the SCA Price Adjustment clause is that there be a change (increase or decrease) in the cost of providing the wages and benefits required by a WD.

33. RRC did experience a change (i.e., an increase) in the cost of providing health and welfare, accidental death & disability, and life insurance benefits required by a WD during GFYs 2004, 2005 and 2006.

34. RRC, in providing these benefit plans, incurred specific out-of-pocket costs that were paid to bona fide, third-party insurance companies that undertook to provide the particular benefits mandated by the CBA incorporated into the WD.

35. Accordingly, RRC is entitled to a price adjustment pursuant to the SCA Price Adjustment clause.

**Count II**
**(SCA Price Adjustment – Overtime Compensation)**

36. RRC incorporates paragraphs 1 through 32 of this Complaint as if fully set forth herein.

37. RRC's Contract requires RRC to provide personnel to staff the Guam facilities on a 24-hour a day, seven day per week basis. This effectively requires RRC to incur a certain

amount of overtime compensation. Overtime compensation, therefore, simply is a necessary element of RRC's wage cost.

38. The SCA Price Adjustment clause is supposed to be a limited cost-reimbursement price adjustment provision. Under the SCA Price Adjustment clause, RRC is entitled to recover the additional incremental cost incurred because of an increased wage rate.

39. RRC did experience a change (i.e., an increase) in the cost of providing overtime compensation required by a WD during GFYs 2004, 2005 and 2006. Extra overtime wages caused by a change in the WD are compensable under the SCA Price Adjustment clause.

40. RRC is seeking only the incremental wage increase over what it would have paid for the same overtime work in the previous year of the Contract, but not the basic overtime premium itself on the wages as bid.

41. Accordingly, RRC is entitled to a price adjustment pursuant to the SCA Price Adjustment clause.

**Count III**
**(SCA Price Adjustment - Guam Gross Receipts Tax)**

42. RRC incorporates paragraphs 1 through 32 of this Complaint as if fully set forth herein.

43. The SCA Price Adjustment clause allows the contractor to receive a price adjustment for increased federal and state taxes when the contractor's increased tax burden is a direct consequence of an increased WD wage and/or fringe benefit rate.

44. RRC is required to pay the Guam Gross Receipts Tax. The amount of tax owed by RRC increased as a consequence of increased payrolls mandated by the CBA and WD. The Guam Gross Receipts Tax thus has the same effect as a proportional tax on employer payrolls such as social security tax, state and federal unemployment tax and workers' compensation.

45. Because RRC's Guam Gross Receipts Tax increased as a direct consequence of an increased WD wage and/or fringe benefit rate, RRC is entitled to recover that increase under the SCA Price Adjustment clause.

**Count IV**
**(Changes Clause - Course of Dealing**
**Guam Gross Receipts Tax)**

46. RRC incorporates paragraphs 1 through 45 of this Complaint as if fully set forth herein.

47. RRC previously contracted with FISCSD (under Contract No. N00244-99-C-0044, dated May 26, 1999) to provide communications facilities maintenance and operations services on Guam. On three occasions during that contract, the DOL issued an updated WD that FISCSD, in turn, incorporated into RRC's Contract. In each of those instances, RRC submitted an SCA price adjustment request. Those requests sought adjustments for increases in, among other items, gross receipts taxes to be paid to the government of Guam.

48. On multiple occasions under the prior contract, the Government granted price adjustments to RRC that included an allowance for the increased Guam Gross Receipts tax.

49. These adjustments were agreed to on December 11, 2000, February 26, 2002, and January 30, 2003, respectively. In addition, the Government has agreed to pay other contractors a price adjustment for similar state or territorial taxes.

50. FISCSD, throughout its course of dealing and course of performance with RRC and other contractors, repeatedly has interpreted the SCA price adjustment clause to allow a price adjustment so that contractors can comply with the SCA requirements without being penalized.

51. Specifically, the Government's actions in the prior instances were consistent with the intent of the SCA Price Adjustment clause in that the Guam Gross Receipts tax is a proportional tax that increases as a direct result of an increase in WD wages and fringe benefits.

52. RRC bid on the instant Contract with knowledge of and in reliance on the historical interpretation, course of dealing, course of performance and past experience described in the preceding paragraphs.

53. By interpreting the SCA Price Adjustment clause in a manner that prohibits an adjustment for the recovery of the increased costs of the Guam Gross Receipts Tax, the Government has effected a constructive change to the Contract.

54. Accordingly, RRC is entitled to an equitable adjustment of the Contract to compensate it for the changed requirements of the Government.

**Count V**
**(Changes Clause - Course of Dealing**
**H&W, Life Insurance, and Accidental Death & Disability Benefits)**

55. RRC incorporates paragraphs 1 through 54 of this Complaint as if fully set forth herein.

56. FISCSD, in addition to allowing the previously pled SCA price adjustments for increased gross receipts taxes, the Government also accepted RRC's proposed SCA price adjustments on each of three occasions under the prior contract for the increased costs of providing H&W benefits, life insurance, and accidental death & disability insurance.

57. These adjustments were agreed to on December 11, 2000, February 26, 2002, and January 30, 2003. In addition, the Navy has agreed to similar adjustments under other contracts with RRC. Further, the Government has agreed to pay contractors a price adjustment for similar defined benefit plans.

58. FISCSD, therefore, throughout its course of dealing and course of performance with RRC and other contractors repeatedly has interpreted the SCA price adjustment clause to allow a price adjustment so that contractors can comply with the SCA requirements without being penalized.

59. RRC bid on the instant Contract with knowledge of and in reliance on the historical interpretation, course of dealing, course of performance and past experience described in the preceding paragraphs.

60. By interpreting the SCA Price Adjustment clause in a manner that prohibits an adjustment for the recovery of the increased costs of providing H&W benefits, life insurance, and accidental death & disability insurance, the Government has effected a constructive change to the Contract.

61. Accordingly, RRC is entitled to an equitable adjustment of the Contract to compensate it for the changed requirements of the Government.

**Count VI**
**(Changes Clause - Course of Dealing**
**Overtime Compensation)**

62. RRC incorporates paragraphs 1 through 61 of this Complaint as if fully set forth herein.

63. FISCSD, in addition to allowing the previously pled SCA price adjustments for increased gross receipts taxes, H&W benefits, life insurance, and accidental death and disability insurance, the Government also accepted RRC's proposed SCA price adjustments on each of three occasions under the prior contract for the increased costs of paying overtime compensation.

64. These adjustments were agreed to on December 11, 2000, February 26, 2002, and January 30, 2003. In addition, the Navy has agreed to similar adjustments under other contracts

with RRC. Further, the Government has agreed to pay other contractors a price adjustment for similar overtime wage costs.

65. FISCSD, therefore, throughout its course of dealing and course of performance with RRC and other contractors repeatedly has interpreted the SCA price adjustment clause to allow a price adjustment so that contractors can comply with the SCA requirements without being penalized.

66. RRC bid on the instant Contract with knowledge of and in reliance on the historical interpretation, course of dealing, course of performance and past experience described in the preceding paragraphs.

67. By interpreting the SCA Price Adjustment clause in a manner that prohibits an adjustment for the recovery of the increased costs of paying overtime compensation, the Government has effected a constructive change to the Contract.

68. Accordingly, RRC is entitled to an equitable adjustment of the Contract to compensate it for the changed requirements of the Government.

**Count VII**
**(Mutual Mistake - Reformation)**

69. RRC incorporates paragraphs 1 through 68 of this Complaint as if fully set forth herein.

70. FISCSD allowed the previously pled SCA price adjustments for increased gross receipts taxes, H&W benefits, life insurance, accidental death & disability insurance, and also accepted RRC's proposed SCA price adjustments on each of three occasions under the prior contract for the increased costs of paying overtime compensation.

71. These adjustments were agreed to on December 11, 2000, February 26, 2002, and January 30, 2003. In addition, the Navy has agreed to similar adjustments under other contracts with RRC. Further, the Government also has agreed to pay other contractors a price adjustment for similar costs.

72. FISCSD and the Government, therefore, repeatedly understood and interpreted the SCA price adjustment clause to allow a price adjustment so that RRC and other contractors can comply with the SCA requirements without being penalized.

73. RRC bid on the instant Contract with knowledge of and in reliance on this understanding and historical interpretation in addition to its course of dealing, course of performance and past experience described in the preceding paragraphs.

74. By interpreting the SCA Price Adjustment clause in a manner that prohibits an adjustment for the recovery of the increased costs of paying overtime compensation, the Government has reversed its long-standing understanding and interpretation of the clause in a manner that is at odds with the parties' well-established understanding and interpretation.

75. FISCSD, in the final decision of the contracting officer (Ex. 1, at 7), stated that its earlier interpretation of the clause was a "simple mistake on the part of a prior contracting officer."

76. If FISCSD's current interpretation is deemed correct, which interpretation RRC does not concede, RRC, by virtue of acting upon and sharing the understanding and interpretation now described as a mistake, was itself laboring under a mistaken fact, i.e., a mistaken interpretation of the Navy's understanding of the clause.

77. RRC is entitled to reformation of the Contract because of the mutual mistake of fact made by the parties in entering into this Contract.

78. RRC and the Navy were mutually mistaken in their belief as to a fact, specifically, their assumption that the Navy would not change its historical interpretation of the SCA Price Adjustment clause.

79. The parties also were mistaken in their belief that the Navy would grant a price adjustment under the same circumstances as in the past.

80. The mistaken beliefs that the contracting parties held constituted basic assumptions underlying the Contract. Specifically, RRC (and all other bidders) would have bid contingency and the Navy would have agreed to pay that contingency if the parties had known that a price adjustment would not be forthcoming.

81. The mistakes had a material effect on the bargain.

82. Finally, the Contract did not put the risk of the mistake on the party seeking reformation, i.e., RRC. To the contrary, the Contract's SCA Price Adjustment clause reasonably led RRC to believe there was no risk.

## Prayer for Relief

WHEREFORE, RRC respectfully requests that this Court enter judgment granting the following relief.

A. On Count I (SCA Price Adjustment – H&W, Life Insurance, and Accidental Death & Disability Benefits) judgment in the amount of $ 476,007; plus

B. On Count II (SCA Price Adjustment – Overtime Compensation) judgment in the amount of $ 33,430; plus

C. On Count III, (SCA Price Adjustment – Guam Gross Receipts Tax) judgment in the amount of $ 321,289; or, in the alternative,

D. On Count IV (Changes Clause – Course of Dealing – Guam Gross Receipts Tax) judgment in the amount of $ 321,289; plus,

E. On Count V (Changes Clause – Course of Dealing – H&W, Life Insurance, and Accidental Death & Disability Benefits) judgment in the amount of $ 476,007; plus,

F. On Count VI (Changes Clause – Course of Dealing – Overtime Compensation) judgment in the amount of $ 33,430; or, in the alternative,

G. On Count VII (Mutual Mistake - Reformation) judgment in the amount of $830,725; and, for all counts,

H. Interest under the Contract Disputes Act; plus,

I. Such other relief as may be proper.

Respectfully submitted,

**EPSTEIN BECKER & GREEN, P.C.**

DATED: May 9, 2006

By: Daniel B. Abrahams
1227 25th Street, N.W., Suite 700
Washington, D.C. 20037
Telephone (202) 861-0900
Facsimile (202) 296-2882
dabrahams@ebglaw.com

Of Counsel:

Howard A. Wolf-Rodda
(participating *pro hac vice* at the request of Daniel B. Abrahams, attorney of record, pursuant to RCFC 83.1(a))
Epstein Becker & Green, P.C.
1227 25th Street, N.W., Suite 700
Washington, D.C. 20037

Exhibit 1

DEPARTMENT OF THE NAVY
FLEET AND INDUSTRIAL SUPPLY CENTER
937 NORTH HARBOR DRIVE
SAN DIEGO, CA 92132-0060

SENT BY EMAIL, RETURN RECEIPT REQUESTED

4200
Ser 230/0052
May 11, 2005

Mr. Victor Melnikow
Vice President & General Manager
Rome Research Corporation
314 South Jay St.
Rome, NY 13440

Dear Mr. Melnikow:

SUBJECT: CONTRACTING OFFICER FINAL DECISION/ROME RESEARCH CORPORATION CLAIM UNDER CONTRACT N00244-02-C-0052

Decision

This letter is in response to a certified claim submitted on behalf of Rome Research Corporation (RRC) by Mr. Daniel Abrahams, Counsel to RRC on March 15, 2005. That Claim is hereby denied in its entirety.

Discussion

RRC is seeking payment in the total amount of $830,725. The claim asserts that the Navy has incorrectly and unfairly refused to grant RRC a full price adjustment pursuant to Federal Acquisition Regulation (FAR) clause 52.222-43, Fair Labor Standards Act and Service Contract Act - Price Adjustment (the SCA Price Adjustment Clause), which applies to the subject firm-fixed price contract. FAR 52.222-41, Service Contract Act (SCA) of 1965, as amended is also incorporated in the contract. For the purposes of the SCA, and with respect to FAR 52.222-43, RRC's Collective Bargaining Agreement (CBA) is regarded as the CBA wage determination (WD) applicable to this contract.

The RRC claim covers three separate cost elements: (a) health & welfare (H&W) benefits, (b) Guam Gross Receipts Tax (GRT) and (c) overtime premium, all costs of which the Contracting Officer disallowed and excluded from the total contract price adjustment provided under modification P00009 pursuant to the SCA Price Adjustment clause. Further, RRC claims it is entitled to a price adjustment because such an adjustment is consistent with the prior course of dealing between the Navy and RRC. As to that portion of the claim that relates to increased Guam GRT costs, RRC alternatively asserts it is entitled to an equitable adjustment as a consequence of changed circumstances and pursuant to the changes clause of the contract (FAR 52.243-1, Changes-Fixed Price – Alternate II).

SUBJECT: CONTRACTING OFFICER FINAL DECISION/ROME RESEARCH CORPORATION CLAIM UNDER CONTRACT N00244-02-C-0052

Following is the Navy's response addressing each cost element as presented by RRC.

(a) H&W Benefits: RRC claims it is entitled to a price adjustment of $476,007 for increased H&W benefits costs required by its CBA.

In accordance with the SCA, the Navy incorporated the CBA between RRC (as the predecessor contractor) and the International Brotherhood of Teamsters, Local Union No. 111, into the solicitation and successor contract for the base year. During the contract base year, the CBA covered those bargaining unit service employees performing at sites already under the predecessor contract. A Standard WD covered non-bargaining unit service employees performing at new sites that were added to the successor contract. Before the start date of the first option year, RRC submitted a revised CBA providing membership to the Standard WD employees at these additional sites. RRC submitted the revised CBA in a timely manner and in accordance with the provision of FAR 22.1012-3. The Navy accepted the CBA and applied its monetary provisions to the first option year by operation of law. The Navy adjusted the contract price by modification, P00009.

The CBA terms require RRC to provide a health plan, a dental plan, life insurance and accidental death & disability (ADD) insurance (collectively, defined-benefit plans) but is completely silent with regard to RRC's cost obligations under those plans. Under the CBA, RRC may provide coverage under either the present insurance carrier or through other carriers providing equivalent plans, at costs to be determined outside of collective bargaining. RRC purchased health and dental insurance as well as life/ADD insurance for all covered employees and is seeking reimbursement under the SCA Price Adjustment clause for premium cost increases. The amount claimed includes (1) the annual premium increases for those workers who were already covered by said plans during the previous contract year (base year) and, (2) the annual premium costs for the new union members, less the costs of furnishing the hourly H&W benefit of $2.15 required by the previously applicable Standard WD.

The very essence of this dispute lies in the Navy's determination that the cost increases incurred by the contractor in providing defined-benefit plans during the contract option years are not allowable under the SCA Price Adjustment clause, contrary to RRC's claim. The Navy has taken care to ensure its determinations and resultant response are based on a fair and reasonable interpretation of, and therefore, in conformance with, the SCA. Its position is consistent with Department of Labor (DoL) interpretations of the SCA.

SUBJECT: CONTRACTING OFFICER FINAL DECISION/ROME RESEARCH CORPORATION CLAIM UNDER CONTRACT N00244-02-C-0052

In a recent decision, the Armed Services Board of Contract Appeals (ASBCA) outlines the DoL interpretation of applicable regulations, 29 Code of Federal Regulations (C.F.R.) §4.177(a)(3). "Consistent with the SCA and these regulations, DoL has interpreted the mandate of CBA provisions for a defined benefit plan to allow for providing an equivalent benefit, as long as the successor contractor incurs at least the same cost as that of the named benefits. Where the CBA does not include provision for the costs of the benefits, **compliance with an applicable wage determination does not compel the contractor to incur increased costs (emphasis added).** See, *Appeal of Lear Siegler Services, Inc. Under Contract No. F41689-01-C-0029 (Lear-Siegler),* ASBCA No. 5449 (2005) at page 9.

Following that interpretation and applying the law and regulations to facts strikingly similar to those in the instant claim, the ASBCA denied a claim for increased costs incurred as a result of a contractor providing the exact benefits in a successor contract, without regard to costs. "... The increased costs of furnishing H&W benefits to appellant's union employees did not result from a change in the CBA at the beginning of the renewal period or from a change in the scope of benefits to be provided. What occasioned the increases were changes in health insurance costs and appellant's determination to provide the defined benefit plan in its CBA rather than the equivalent benefits." The ASBCA went on to say that the "...increased costs did not result from the requirement to comply with the applicable wage determination, i.e., the CBA." See *Appeal of Lear Siegler Services, Inc, a* at page 10.

In the instant contract, RRC negotiated a new CBA with the identical benefits plan as that offered in the predecessor CBA. The CBA provided the workers a defined benefit plan with no defined employer cost contribution. While the CBA may require RRC to provide specific benefits, the SCA does not require a successor to provide specific benefits. Further, the increases in cost for this plan were not the result of arms-length bargaining between union and contractor and therefore not a requirement for RRC as a successor under Section 4(c) of the SCA.

The intent of the SCA clause, at FAR 52.222-43, is to provide monetary relief in a fixed-price contract for costs that are imposed on the contractor by the application of the SCA. Where increased costs do not result from compliance with the SCA, a price adjustment is not recognized. The Navy, pursuant to the SCA, Section 4(c), will not therefore pay for any increases in the costs not mandated by the SCA.

(b) Guam GRT: RRC states it is entitled to a price adjustment of $321,289 for increased GRT under the SCA Price Adjustment clause.

First, RRC advances its opinion that at worst, the SCA Price Adjustment clause contains an ambiguity. Specifically, RRC submits that certain costs including wages, fringe benefits, taxes and worker's compensation insurance are expressly allowable, and that three types of costs, namely overhead, G&A and profit are unallowable for adjustment, but the clause is silent about taxes like the GRT. Based on this opinion, RRC asserts that the GRT should be treated like the other Navy taxes allowed by the clause – FICA, FUTA and SUTA.

SUBJECT: CONTRACTING OFFICER FINAL DECISION/ROME RESEARCH CORPORATION CLAIM UNDER CONTRACT N00244-02-C-0052

The Contracting Officer could not disagree more with RRC's interpretation. The SCA Price Adjustment clause could not be clearer in providing that any adjustment shall be limited to changes in the wages, fringe benefits and accompanying changes in social security, unemployment taxes and workmen's compensation insurance; and, adjustments shall not include any additional amounts for G&A, overhead and profit. There is no language in this clause, whatsoever, that would compel the Contracting Officer to agree that the GRT falls into any of the allowable categories. Compare *Aleman Food Services, Inc. v. United States*, 994 F.2d. 819 (Fed.Cir. 1993) (increases in workers' compensation and unemployment insurance taxes resulting from changes in state law not recognized for adjustment). See also *Page Airways, Inc., ASBCA* No. 21065, 77-1 BCA ¶10,520 (increased costs resulting from an increase in the annual insurance premium for workmen's compensation insurance not recognized for adjustment)." Cited in *Lear-Siegler, Inc.*, at page 9.

Additionally, in the matter of taxes, the contract includes FAR 52.229-3, Federal, State and Local Taxes under which RRC could have projected or estimated any future GRT costs in its bid price but elected not to do so.

Alternatively, RRC asserts it is entitled to a price adjustment for increased GRT under the Changes clause of the contract, FAR 52.243-1 Alternate II. RRC suggests that the Changes clause provides a remedy for burdens (GRT in this case) caused by newly adopted wage determinations. RRC further claims that if the Navy is treating the previous GRT payments as a mistake, it is tantamount to rewriting or constructively changing the contract. Thus, RRC states it should receive an equitable adjustment to account for the changed requirements of the Navy.

RRC should examine FAR 52.243-1, Alternate II, if only to verify the six types of changes for which equitable adjustments are authorized under the clause. In this case, the Navy has not changed the contract work pursuant to the Changes clause and any payments afforded a contractor under the Changes clause has no application to price adjustments made in accordance with the SCA Price Adjustment clause. This very argument was in fact rejected by the ASBCA in *All Star/SAB Pacific, JV*, ASBCA No. 50856, 98-2 BCA P 29,958 (1998).

On every basis alleged, RRC is not entitled to any remuneration on its claims for reimbursement for GRT. See the case, *All Star/SAB Pacific, JV*, ASBCA No. 50856, 98-2 BCA P 29,958 (1998); and see *All Star/SAB Pacific, JV*, ASBCA No. 50856, 99-1 BCA P30,214 (1999) at page 2 of 4 (see 1999 Lexis 5):

> Reading this contract in accordance with its express terms and plain meaning, it is clear that the wage rate adjustment clause, FAR 52.222-43..., expressly lists and limits the items the Government will pay for as part of the contract price increase. ... The State of Hawaii general excise tax is not listed ... We fail to see how this clause, reasonably construed, admits to the allowability of Hawaii general excise tax.

SUBJECT: CONTRACTING OFFICER FINAL DECISION/ROME RESEARCH CORPORATION CLAIM UNDER CONTRACT N00244-02-C-0052

(c) Overtime Premium Costs: RRC claims it is entitled to a price adjustment to account for increased overtime costs in the amount of $33,430, attributable to the increase in the wage rates. It is RRC's interpretation that increases in overtime rates due to an increase in the base wage rates are covered by the SCA Price Adjustment clause.

Overtime premium costs are not protected by the SCA and thus, not reimbursable under the SCA Price Adjustment clause. The Contracting Officer directs the contractor's attention to Section 4.180 of 29 CFR Part 4 that specifically states "The Act does not provide for compensation of covered employees at premium rates for overtime hours of work."

(d) All Claims/Prior Course of Dealing: With respect to all three cost elements, RRC contends it is entitled under the SCA Price Adjustment clause to a price adjustment because it is consistent with the course of dealing between the Navy and RRC. RRC states that the Navy accepted proposed SCA price adjustments, including increases in H&W, Guam GRT and overtime premium costs during the three option years of the predecessor contract and therefore, the Navy throughout its course of dealing with RRC, has interpreted the SCA Price Adjustment clause to allow the GRT costs. The Navy rejects this argument as without merit.

The Navy asserts that reliance on "past-practice" in this case is inappropriate. First and foremost, there is no contract ambiguity -- entitlement is based on interpretation of key contract clauses that are known to the Contractor. The past-practices of the contracting officer in earlier contracts and/or option periods constituted a windfall. There is neither ambiguity nor is there detrimental reliance.

The clause relating to fixed-price contracts, Federal State and Local Taxes, includes FAR 52.229-3, incorporated into this contract by reference, clearly and unequivocally requires the contractor to consider increases in taxes when calculating its fixed price(s) throughout the contract term. Nothing in the SCA, or any other law, contradicted the clear, unequivocal requirement that the contractor consider these taxes as business costs. Accordingly and with respect to the GRT, the contractor cannot prove that the language was and is ambiguous. Conversely, RRC knew or should have known that the payment of these taxes, wholly unrelated to the SCA, was a windfall and should not have relied on such past-practice in formulating its pricing strategy. See *All Star/SAB Pacific, JV,* ASBCA No. 50856, 99-1 BCA P30, 214 (1999), also found in 1999 ASBCA Lexis 5.

In *All Star, supra.,* the contractor made the same arguments that RRC has made with respect to Hawaii excise taxes. Finding insufficient evidence of a prior course of dealing justifying payment, the Board also stated its position concerning extrinsic evidence: "We also reiterate our original holding as confirmed by the case law ... that extrinsic evidence may not be offered to vary the clear terms of a contract." 1999 ASBCA Lexis 5 at 3 of 4. To repeat, prior course of dealing cannot be used to contradict express contract terms and conditions.

SUBJECT: CONTRACTING OFFICER FINAL DECISION/ROME RESEARCH CORPORATION CLAIM UNDER CONTRACT N00244-02-C-0052

The same lack of ambiguity is true in the case of overtime payments. The SCA clearly and unequivocally does not allow the Navy to pay overtime premiums. See discussion (c), above.

Interestingly, the ASBCA also addressed similar arguments in the *Lear-Siegler, Inc.* case. As in *Lear-Siegler, Inc.*, and the current RRC claim, the Government paid similar claims in the past. Lear-Siegler, like RRC, claimed that a prior course of dealing mandated payment of its current claim. Both were and are attempting to use the doctrine of prior course of dealing to vary from unambiguous contract terms *See Lear-Siegler* at page 11.

Neither Appellant Lear-Siegler, nor claimant RRC, can document exchanges between parties during negotiations, option exercise, or at any other time, that show that both parties knew and agreed to deviate from express contract terms. There is, to quote *Lear-Siegler*, at page 11, "no suggestion or evidence that a contract provision, upon which a contractor relies, has been changed as a result of government conduct." Accordingly, the Navy should not adjust the contract price upwards, in contravention of clear contract terms and conditions, laws and regulation.

With respect to *all* the adjustments requested, the Navy contends that it should not be estopped from denying the claim. The prior course of conduct does not relate to an ambiguity or question about the specifications – it relates to entitlements set by express contract terms, law, and regulation. RRC is relying on past-practice to recover money based on an erroneous application of law, regulation, and in contravention of a contract clause.

The contracting officer that approved prior claims for payment had no authority to pay these claims in the past; and, that contracting officer's actions should not control when entitlement as a matter of law is at issue. Note the Supreme Court's decision in *OPM v. Richmond,* 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990), "which held that (arguably), absent fraud by the Navy, estoppel could never be asserted against it in suits to compel the payment of money from the public treasury in contravention of eligibility requirements contained in an Act of Congress ..." *Melrose Associates, L.P. v. U.S.,* 45 Fed.Cl. 56, (September 30, 1999).

It is clear that some form of affirmative misconduct on the part of the official, with the intent to induce reliance, may be required to estop the Navy from paying a claim in contravention of eligibility requirements. See *Heckler v. Community Health Services of Crawford County,* 467 U.S. 51, 59, 104 S.Ct 2218, 81 L.Ed.2d 42 (1984). Reh'g denied, 497 U.S. 1046, 111 S.Ct. 5, 11 L.Ed.2d 821 (1990) ... The Court held that while the Navy "may not be estopped on the same terms as any other litigant," id. at 60, 104 S.Ct. 2218, the Supreme Court refused to hold that estoppel might not be used when justified by the "countervailing interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with their Navy." Id. at 61, 104 S.Ct. 2218.

SUBJECT: CONTRACTING OFFICER FINAL DECISION/ROME RESEARCH CORPORATION CLAIM UNDER CONTRACT N00244-02-C-0052

This claim hardly raises the specter of indecency or dishonorable conduct. The Navy should not therefore be estopped from denying the claim based on a simple mistake on the part of a prior contracting officer. There is no evidence whatsoever of fraud or even misconduct – it was and is a simple mistake that should have been noted by RRC. While not relevant per the *All Star, supra,* cases, there is also no evidence whatsoever of detrimental reliance in offer preparation. That fact alone would prove fatal to any claim based on equity. See *All Star, supra.*, 1999 Lexis 5 at 3 of 4.

Finding

Based on the above, and the numerous arguments raised by RRC notwithstanding, the Navy, by and through the Contracting Officer, makes the determination that the increases in H&W benefits, Guam GRT and overtime costs are not allowable under the SCA Price Adjustment clause. With regard to Guam GRT specifically, the contractor's claim pursuant to the changes clause of the contract is without merit. Therefore, RRC's claim for $830,725 is denied in its entirety.

Appeal Rights

This is the final decision of the Contracting Officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C.603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

If you have any further questions concerning this matter, please contact Elena Gertes, Contract Administrator at (619) 532-2894 or e-mail elena.gertes@navy.mil.

Sincerely,

S. K. WASSON
Contracting Officer